WILLIAM F. RITTER, IV
8350 N. Central Expressway
Suite 1310
Dallas, Texas 75206-1639
T 214.724.5364
F 214.373.3455
*william@ritterlawworks.com*

ATTORNEY FOR DIANNE DORMAN, PLAINTIFF

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DIANNE DORMAN** | § | **CASE NO. 16-40061-RFN-13** |
| | § | |
| **Debtor** | § | |
| _____ | § | |
| | § | |
| **DIANNE DORMAN** | § | **ADV. NO. _____** |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **OCWEN LOAN SERVICING, LLC,** | § | |
| **Mortgage Loan Servicer for** | § | |
| **DEUTSCHE BANK NATIONAL TRUST COMPANY** | § | |
| | § | |
| *Defendant* | § | |

### COMPLAINT FOR DECLARATORY RELIEF

TO THE HONORABLE RUSSELL F. NELMS, U.S. BANKRUPTCY JUDGE:

COMES NOW Dianne Dorman, Debtor herein, and file this Complaint for Declaratory Relief (the "Complaint"), and respectfully states as follows:

### I.   JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and § 1334. This is a proceeding to determine Plaintiff's interest in certain property, and thus, is a core proceeding pursuant to 28 U.S.C. §§ 157 (b)(2)(A) and (O).

2.        Venue for this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409.

## II. PARTIES

3.        Plaintiff is the Debtor in this Chapter 13 case that was commenced January 4, 2016.

4.        Defendant Ocwen Loan Servicing, LLC, Mortgage Loan Servicer for Deutsche Bank

National Trust Company ("Bank") is a corporation doing business in the State of Texas.  Bank may be

served with this Complaint and the summons by serving its registered agent, Corporation Service

Company dba CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX

78701-3218.

## III. FACTUAL AND PROCEDURAL BACKGROUND

5.        In 2005, Plaintiff purchased her homestead located at 100 Ascot Drive, Southlake, Texas

76092 (the "Property"). Plaintiff has continuously occupied the Property from the date of purchase as

her homestead.

6.        In 2006, Plaintiff executed a Texas Home Equity Affidavit and Agreement (First Lien)

"Home Equity Loan" and a Texas Home Equity Security Instrument (First Lien) "Deed of Trust" against

the Property.

7.        In 2009, Bank escrowed the monthly mortgage payments on the Home Equity Loan for

property taxes.

8.        Property taxes assessed for 2010, 2011, 2012 and 2013 were not paid until 2014.

9.        Bank participated in Plaintiff's first bankruptcy case filed in 2010, Case No. 10-45884-

DML13, by filing a Notice of Appearance and a Proof of Claim. However, Bank did not respond to

Plaintiff's Objection to Claim and an Order was entered allowing a secured claim for pre-petition

arrearage of $35,794.63 on 7/26/2011. A true and correct copy of the Proof of Claim, Notice of

Appearance, Objection to Claim, and Order Allowing Claim are the attached "Exhibit A," "Exhibit B,"

"Exhibit C," and "Exhibit D," respectively.

10.     Bank participated in Plaintiff's second bankruptcy case which was filed in 2014, Case No. 14-40994-RFN13, by filing a Notice of Appearance and Objection to Confirmation. Bank, however, failed to timely file a proof of claim. A true and correct copy of the Notice of Appearance, Objection to Confirmation, Confirmation Order, and Proof of Claim filed by the Debtor are the attached "Exhibit E," "Exhibit F," "Exhibit G," and "Exhibit H," respectively.

11.     Bank alleges a pre-petition arrearage claim of $266,098.70 in the Objection to Confirmation filed in the current bankruptcy case. A true and correct copy of the Objection to Confirmation is the attached "I."

12.     Plaintiff believes the pre-petition arrearage claim is $85,000.00.

13.     Plaintiff believes that she has not been given credit for all payments made on her account.

14.     Plaintiff believes that payments made to escrow were not timely paid by Bank to property taxing authorities incurring needless additional interest expense at the statutory rate owed to property taxing authorities of 12% for as long as 4 years.

15.     Plaintiff believes that unauthorized and unnecessary charges for fees and costs have been levied upon her account.

16.     Plaintiff has requested, but has not received, a complete account history in both her prior bankruptcy cases and in the current bankruptcy case.

17.     Plaintiff accepted an offer to purchase a right of way and temporary construction easement ("Street Property") from the City of Southlake but was frustrated in her attempt to sell the Street Property by Bank and a failure to determine the true amount owed to Bank.

### IV. CLAIM FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201

18.     The foregoing paragraphs are incorporated herein by reference for all purposes.

19.      Pursuant to 11 U.S.C. §§ 105 and 541 and the Federal Declaratory Judgement  Act, 28

U.S.C. & 2201 et seq., and bases upon the allegations herein, Plaintiffs seek a declaratory judgement

that the Property is property of Debtor's bankruptcy estate.

20.      In order to state a claim for declaratory relief under 28 U.S.C. § 2201, a party must

provide sufficient facts to demonstrate (1) a substantial controversy, (2) the controversy is between

parties having adverse legal interests, and (3) the imminent and real nature of the controversy. *Golden

v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959-60 (1969).

21.      In this action, a substantial controversy exists with the respect to the declaratory relief

sought by Plaintiff in that Plaintiff is seeking to establish the Property is owned by Plaintiff, that it is not

in default in the amount claimed by Bank, and that it is property of bankruptcy estate which is

inconsistent with the claims asserted by Defendant Bank.  The declaratory relief sought by Plaintiff is

imminent and real and creates adverse legal interests by and between the Plaintiff and Defendant Bank

with respect to the amount and extent of the lien against the Property. To the extent the declaratory

relief sought by Plaintiff involves the wrongful acts or omissions of Defendant Bank, Plaintiff reserves

the right to plead additional cause of action.

## V.  PRAYER

WHEREFORE, after trial of this adversary proceeding, Plaintiffs respectfully request that this

Court enter a judgement determining the amount due on Bank's claim, declaring the Property is

property of the Plaintiff's bankruptcy estate, and granting Plaintiff such other and further relief to which

she may be justly entitled.

DATED:  May 10, 2016.

Respectfully submitted,


 /s/ William F. Ritter, IV
WILLIAM F. RITTER, IV
State Bar No. 16955500

8350 N Central Expressway
Suite 1310
Dallas, Texas 75206
T 214.724.5364
F 214.373.3455
*william@ritterlawworks.com*

ATTORNEY FOR PLAINTIFF
DIANNE DORMAN

# EXHIBIT A

| UNITED STATES BANKRUPTCY COURT <u>NORTHERN</u>     DISTRICT OF <u>TEXAS</u> | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor  Dorman,L.,Dianne | Case Number:  10-45884 |
|---|---|

*NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case.  A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. Sec. 503.*

| Name of Creditor(the person or other entity to whom the debtor owes money or property):  DEUTSCHE BANK NATIONAL TRUST COMPANY,Trustee POOLING AND SERVICING AGREEMENT Dated as of January 1, 2007 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NC1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1 | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent<br>Ocwen Loan Servicing, LLC<br>Attn:Bankruptcy Department<br>1661 Worthington Rd<br>Suite 100<br>West Palm Beach, FL 33409<br>Phone No: 1-888-554-6599<br>Fax No: 407-737-5634 | **Court Claim Number:**<br>*(If known)*<br><br>Filed on: |

| Name and address where payments should be sent<br>Ocwen Loan Servicing, LLC<br>Attn: Cashiering Department<br>1661 Worthington Rd<br>Suite 100<br>West Palm Beach, FL 33409 | Trustee payments need to be sent to the below:<br>Ocwen Loan Servicing, LLC<br>Attn: Cashiering Department<br>P.O. Box 24781<br>West Palm Beach, FL 33416-4781 | ☐ Check Box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check this box if you are the debtor or trustee in this case. |
|---|---|---|

| **1. Amount of Claim as of Date Case Filed:**  $ 270278.85<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete    item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. Sec 507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim. |
|---|---|

| **2. Basis for Claim:**     Money loaned<br>(See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. Sec 507(a)(1)(A) or (a)(1)(B). |
|---|---|

| **3. Last four digits of any number by which creditor identifies debtor:**     0339<br><br>**3a. Debtor may have scheduled account as:**     8600<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor`s business, whichever is earlier 11 U.S.C. Sec 507 (a)(4). |
|---|---|

| **4. Secured Claim**(See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:**    ☒  Real Estate    ☐  Motor Vehicle    ☐  Other<br>**Describe:**<br>**Property Address:**  100 , Ascot Dr , Southlake , TEXAS - 76092<br><br>**Value of Property:**   $ 390000.0     **Annual Interest Rate**  7.97500 %<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>**if any:** $ 87480.16       **Basis for perfection:**  Secured<br><br>**Amount of Secured Claim:**$ 270278.85    **Amount Unsecured:**   $ 0 | ☐ Contributions to an employee benefit plan 11 U.S.C. Sec 507 (a)(5).<br><br>☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use 11 U.S.C. Sec 507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units 11 U.S.C. Sec 507 (a)(8). |
|---|---|

| **6. Credits:**   The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other Specify applicable paragraph of 11 U.S.C. Sec 507 (a)(__). |
|---|---|
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary.*(See definition of redacted on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br>If the documents are not available, please explain: | **Amount entitled to priority:**<br><br>$<br><br>*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date:<br>09/13/10 | Signature:The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>/s/ Rushabh Shah, Assistant Manager | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. Secs. 152 and 3571.*

**EXHIBIT "A"**

**ITEMIZATION OF CLAIM**

| | |
|---|---|
| **Date of Filing:** | 09/06/2010 |
| **Case Number:** | 10-45884 |
| **Debtor:** | Dorman,L.,Dianne |
| **Creditor:** | DEUTSCHE BANK NATIONAL TRUST COMPANY,Trustee POOLING AND SERVICING AGREEMENT Dated as of January 1, 2007 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NC1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1 |

**Arrearage:**

| | | |
|---|---|---|
| **Monthly Payments:** | $ | 29207.85 |
| **Late Charges:** | $ | 1390.8 |
| **Non Sufficient Fund Charges:** | $ | 0.0 |
| **Escrow Advances:** | $ | 53612.91 |
| **Fees, Costs & Property Preservation Expenses:** | $ | 3118.6 |
| **Securitized Interest Arrearage:** | $ | 0.0 |
| **Interest on Claim:** | $ | 0.0 |
| **POC Fee:** | $ | 150.0 |
| **(Forbearance Suspense):** | $ ( | 0.0 ) |
| **(Miscellaneous Suspense):** | $ ( | 0.0 ) |
| **(Pre-Pet Suspense):** | $ ( | 0.0 ) |
| **TOTAL ARREARAGE:** | $ | 87480.16 |

| | | |
|---|---|---|
| **\*Post-Petition payment amount (including escrow if any) is** | $ | 3462.08 |

**\*Applicable in states where the trustee is required to make post-petition payments on debtors behalf\***

**\*Subject to change according to terms of your note and mortgage\***

**P&I Schedule:**

| From | To | %Rate | Days | P&I |
|------|------|-------|------|-----|
| 01/01/2009 | 01/31/2009 | 7.98000 | 30 | 1390.85 |
| 02/01/2009 | 02/28/2009 | 7.98000 | 30 | 1390.85 |
| 03/01/2009 | 03/31/2009 | 7.98000 | 30 | 1390.85 |
| 04/01/2009 | 04/30/2009 | 7.98000 | 30 | 1390.85 |
| 05/01/2009 | 05/31/2009 | 7.98000 | 30 | 1390.85 |
| 06/01/2009 | 06/30/2009 | 7.98000 | 30 | 1390.85 |
| 07/01/2009 | 07/31/2009 | 7.98000 | 30 | 1390.85 |
| 08/01/2009 | 08/31/2009 | 7.98000 | 30 | 1390.85 |
| 09/01/2009 | 09/30/2009 | 7.98000 | 30 | 1390.85 |
| 10/01/2009 | 10/31/2009 | 7.98000 | 30 | 1390.85 |
| 11/01/2009 | 11/30/2009 | 7.98000 | 30 | 1390.85 |
| 12/01/2009 | 12/31/2009 | 7.98000 | 30 | 1390.85 |
| 01/01/2010 | 01/31/2010 | 7.98000 | 30 | 1390.85 |
| 02/01/2010 | 02/28/2010 | 7.98000 | 30 | 1390.85 |
| 03/01/2010 | 03/31/2010 | 7.98000 | 30 | 1390.85 |
| 04/01/2010 | 04/30/2010 | 7.98000 | 30 | 1390.85 |
| 05/01/2010 | 05/31/2010 | 7.98000 | 30 | 1390.85 |
| 06/01/2010 | 06/30/2010 | 7.98000 | 30 | 1390.85 |
| 07/01/2010 | 07/31/2010 | 7.98000 | 30 | 1390.85 |
| 08/01/2010 | 08/31/2010 | 7.98000 | 30 | 1390.85 |
| 09/01/2010 | 09/30/2010 | 7.98000 | 30 | 1390.85 |

created with evaluation software from www.xmlpdf.com

**EXHIBIT "B"**

**Payoff Information**

| | | | | |
|---|---|---|---|---|
| **Unpaid Principal Balance:** | | | $ | 186237.74 |
| **Interest From:** | 01/01/2009 | to | 09/30/2010 | $ | 25768.8 |
| **Late Charges:** | | | $ | 1390.8 |
| **Non Sufficient Fund Charges:** | | | $ | 0.0 |
| **Escrow Advances:** | | | $ | 53612.91 |
| **Fees, Costs & Property Preservation Expenses:** | | | $ | 3118.6 |
| **Securitized Interest Arrearage:** | | | $ | 0.0 |
| **Interest On Claim:** | | | $ | 0.0 |
| **POC Fee:** | | | $ | 150.0 |
| **(Miscellaneous Suspense):** | | | $ ( | 0.0 ) |
| **(Forbearance Suspense):** | | | $ ( | 0.0 ) |
| **(Pre-Pet Suspense):** | | | $ ( | 0.0 ) |
| **Payoff as of:** | 09/06/2010 | | $ | 270278.85 |
| **Per Diem Amount:** | | | $ | 41.28 |

created with evaluation software from www.xmlpdf.com

| Exhibit C |
|:---:|

| Pre-Petition Fee,Costs & Property Preservation Expenses Breakdown |
|:---:|

| Name: | Dianne L Dorman |
|---|---|
| Loan Number: | ****8600 |
| Case Number: | 10-45884 |

| Description | Amount |
|:---:|:---:|
| Prior Servicer Fees | $3,118.60 |
| | |
| Total | $3,118.60 |

Return To:

New Century Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

Prepared By:
New Century Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

*GF: 225000/429*



WE HEREBY CERTIFY THIS TO
BE A TRUE & CORRECT COPY OF
THE ORIGINAL INSTRUMENT

AUTHORIZED SIGNATURE

——————————— [Space Above This Line for Recording Data] ———————————

**THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY
SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (First Lien)

**This Security Instrument is not intended to finance Borrower's acquisition of the Property.**

CMTG

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 10, 12, 17, 19, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated   **September 8, 2006**                 ,
together with all Riders to this document.

**(B) "Borrower"** is ~~DIANE~~ L. DORMAN

*DIANNE*

Borrower is the grantor under this Security Instrument.

1009749025

**TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH
MERS**



-8046(TX) (0506)  Form 3044.1 1/01
®                 (rev. 10/03)
Page 1 of 18       Initials:
VMP Mortgage Solutions, Inc. (800)521-7291

**(C) "Lender"** is New Century Mortgage Corporation

Lender is a **Corporation**
organized and existing under the laws of **California**
Lender's address is **18400 Von Karman, Suite 1000, Irvine, CA 92612**

Lender includes any holder of the Note who is entitled to receive payments under the Note.
**(D) "Trustee"** is Eldon L. Youngblood

. Trustee's address is
**2711 North Haskell Avenue, Suite 2700 LB 25, Dallas, Texas 75204**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501 - 2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated **September 8, 2006**
The Note states that Borrower owes Lender ONE HUNDRED NINETY THOUSAND AND 00/100
Dollars
(U.S. $ **190,000.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **10/01/2036**
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Extension of Credit"** means the debt evidenced by the Note, as defined by Section 50(a)(6), Article XVI of the Texas Constitution and all the documents executed in connection with the debt.
**(I) "Riders"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

☐ Texas Home Equity Condominium Rider          ☐ Other:
☒ Texas Home Equity Planned Unit Development Rider

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the

1009749025

Initials:

-8046(TX) (0506)                    Page 2 of 18                    Form 3044.1   1/01 ( rev. 10/03)

Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of. MERS. This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the

<table>
<tr><td align="center">County</td><td align="center">of</td><td align="center">Tarrant</td><td>:</td></tr>
<tr><td align="center">[Type of Recording Jurisdiction]</td><td></td><td align="center">[Name of Recording Jurisdiction]</td><td></td></tr>
</table>

**See Legal Description Attached Hereto and Made a Part Hereof**

Parcel ID Number: **06435173**
**100 ASCOT DR.**
**Southlake**
("Property Address"):

which currently has the address of

[Street]

[City], Texas **76092**    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead

Initials:    **1009749025**

VMP®-8046(TX) (0508)    Page 3 of 18    Form 3044.1    1/01 (rev. 10/03)

property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

1009749025

Initials: _____

VMP®-8046(TX) (0506)    Page 4 of 18    Form 3044.1    1/01 ( rev. 10/03)

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

1009749025

Initials:

-8046(TX) (0506)                    Page 5 of 18                    Form 3044.1   1/01 ( rev. 10/03)

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Extension of Credit, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Initials:

1009749025

**8. Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(c), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgment of fair market value of the property as described in Section 27.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such

1009749025

Initials:

Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or

1009749025

Initials:

Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument, but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument and to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Extension of Credit Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Extension of Credit is subject to a law which sets maximum Extension of Credit charges, and that law is finally interpreted so that the interest or other Extension of Credit charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender will make this refund by making a payment to Borrower. **The Lender's payment of any such refund will extinguish any right of action Borrower might have arising out of such overcharge.**

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be

Initials:

1009749025

Page 10 of 16

Form 3044.1    1/01 ( rev. 10/03)

deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the laws of Texas. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution

1009749025

Initials:

-8046(TX) (0506)

Page 11 of 18

Form 3044.1  1/01 ( rev. 10/03)

whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. For example, Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution, generally provides that a lender has 60 days to comply with its obligations under the extension of credit after being notified by a borrower of a failure to comply with any such obligation. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender 60 days after receipt of notice to comply, as provided in this Section 19, with Lender's obligations under the Extension of Credit to the full extent permitted by Section 50(a)(6), Article XVI of the Texas Constitution. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have 60 days after receipt of notice to comply with the provisions of Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender 60 days after such notice has been received by Lender to comply. Except as otherwise required by Applicable Law, only after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit. Borrower will cooperate in reasonable efforts to correct any failure by Lender to comply with Section 50(a)(6), Article XVI of the Texas Constitution.

1009749025

Initials: 

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document may be reformed, by written notice from Lender, without the necessity of the execution of any amendment or new document by Borrower, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document may be reformed, by written notice from Lender, without the necessity of the execution of any new amendment or new document by Borrower.

Lender's right-to-comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a

1009749025

Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.**

**The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.**

**22. Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Initials _____                           1009749025

VMP-8046(TX) (0506)              Page 14 of 18          Form 3044.1   1/01 (rev. 10/03)

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

**24. Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

1009749025

Initials:

**25. Proceeds.** Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or debt to another lender.

**26. No Assignment of Wages.** Borrower has not assigned wages as security for the Extension of Credit.

**27. Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

**28. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**29. Acknowledgment of Waiver by Lender of Additional Collateral.** Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Borrower (except in the event of actual fraud), for the Extension of Credit. This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.

Initials: _____

1009749025

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.

_____ _____ (Seal)
                                                                       -Borrower
Printed Name: _____ DIANE L. DORMAN
                [Please Complete]       DIANNE

_____ _____ (Seal)
                                                                       -Borrower
Printed Name: _____
                [Please Complete]

_____ (Seal)   _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                  -Borrower

1009749025

**STATE OF TEXAS**
County of **Tarrant**

Before me B:llPlunk Notary                on this day personally appeared

Dionne L. Dorman

known to me (or proved to me on the oath of
or through Texas Drivers Lic                ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this 8th day of Sept. 2006 .

(Seal)

> Bill Plunk
> Notary Public, State of Texas
> My Commission Expires:
> September 21, 2009

_____
Notary Public

My Commission Expires: 9-21-09



Initials: ___                1009749025

-8046(TX) (0508)            Page 18 of 18            Form 3044.1  1/01 ( rev. 10/03)

G. F. No. 2250001429

## Exhibit A

Lot 1, Block 2, of CHAPEL DOWNS, an Addition to the City of Southlake, TARRANT County, Texas, according to the plat thereof recorded in Cabinet A, Slide 386, of the Plat Records of TARRANT County, Texas.

**THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),
ARTICLE XVI OF THE TEXAS CONSTITUTION**

# TEXAS HOME EQUITY NOTE
## (Fixed Rate - First Lien)

September                 Southlake               **Texas**
[Date]                  [City]                [State]

ASCOT  DR., Southlake, TX 76092

[Property Address]



**NOTE**

## 1. BORROWER'S PROMISE TO PAY

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for the Extension of Credit that I have received evidenced by this Note, I promise to pay U.S. $190,000.00             (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **New Century Mortgage Corporation**

. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the Security Instrument executed concurrently herewith (the "Security Instrument").

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of         7.975 %. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or Prepayment of the Extension of Credit, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the Principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

     **(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      **1st** day of each month beginning **November 1, 2006**        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **10/01/2036**         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **18400 Von Karman, Suite 1000, Irvine, CA 92612**
             or at a different place if required by the Note Holder.

**1009749025**

TEXAS HOME EQUITY NOTE (Fixed Rate-First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-8035(TX) (0310)
Page 1 of 4
VMP Mortgage Solutions (800)521-7291

Form 3244.1 1/ 01
(rev. 10/03)
Initials: 

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $1,390.85.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. Should the Note Holder agree in writing to such changes, my payments thereafter will be payable in substantially equal successive monthly installments.

## 5. LOAN CHARGES

All agreements between Note Holder and me are expressly limited so that any interest, loan charges, or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this Extension of Credit and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Extension of Credit exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder will make this refund by making a payment to me. **The Note Holder's payment of any such refund will extinguish right of action I might have arising out of such overcharge.**

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity or eliminated as a requirement, if necessary for compliance with such law, and such document may be reformed by written notice from the Note Holder without the necessity of the execution of any new amendment or new document by me.

The provisions of this Section 5 shall supersede any inconsistent provision of this Note or the Security Instrument.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means. This Note may not be accelerated because of a decrease in the market value of the property described above or because of my default under any indebtedness not evidenced by this Note or the Security Instrument.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

1009749025

Initials:

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated as fees to be incurred in connection with maintaining or servicing this Extension of Credit.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of my promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 8 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials:

## 11. APPLICABLE LAW

This Note shall be governed by the law of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

## 12. NO ORAL AGREEMENTS

THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN TEHIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

_____ (Seal)          _____ (Seal)
DIANE L. DORMAN                  -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

*[Sign Original Only]*

1009749025

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NUMBER: 10-45884 |
| DIANNE LOUISE DORMAN | § | |
| DEBTOR(S) | § | |
| | § | |
| | § | CHAPTER 13 |

### NOTICE OF APPEARANCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Shapiro Schwartz, LLP, attorneys for Ocwen Loan Servicing, LLC as servicing agent for DEUTSCHE BANK NATIONAL TRUST COMPANY,Trustee POOLING AND SERVICING AGREEMENT Dated as of January 1, 2007 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NC1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1 ("Noteholder"), its successors in interest and assigns.

Shapiro Schwartz, LLP requests receipt of all copies of notices and pleadings, including but not limited to all notices sent pursuant to Rule 2002 of the Bankruptcy Rules and all copies of all pleadings filed pursuant to Bankruptcy and Local Rules 4001, 9007, and 9013. Copies of all such notices and pleadings should be sent to:

**SHAPIRO SCHWARTZ, LLP**
**ATTN: BANKRUPTCY DEPARTMENT**
**5450 NW CENTRAL DRIVE**
**SUITE 307**
**HOUSTON, TX 77092**

Respectfully submitted,
SHAPIRO SCHWARTZ, LLP

By: /s/ Damian W. Abreo
State Bar Number 24006728
5450 NW Central Drive, Suite 307
Houston, TX 77092
Phone: 713-933-1529
Fax: 713-933-2429

Email: dabreo@logs.com
Attorneys for MOVANT
BS&S Number 09-009710

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of the foregoing Notice have been served on all parties as identified below electronically or by deposit in the United States Mail, first class postage pre-paid on September 14, 2010.


By: <u>/s/ Damian W. Abreo</u>
SHAPIRO SCHWARTZ, LLP


<u>DEBTOR(S):</u>
DIANNE LOUISE DORMAN
100 ASCOT DRIVE
SOUTHLAKE, TX 76092

<u>DEBTOR'S ATTORNEY:</u>
WILLIAM F. RITTER IV
1521 N COOPER STE 550
ARLINGTON, TX 76011


<u>TRUSTEE:</u>
TIM TRUMAN
6851 NORTH EAST LOOP 820
SUITE 300
FORT WORTH, TX 76180

<u>U.S. TRUSTEE:</u>
WILLIAM T. NEARY
1100 COMMERCE ST RM 976
DALLAS, TX 75242

# EXHIBIT C

MACHI & ASSOCIATES, P.C.
1521 N. Cooper, Suite 550
Arlington, TX  76011
(817) 335-8880
(817) 275-6660 (fax)
ATTORNEY FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DIANNE DORMAN | § | CASE NO. 10-45884-DML-13 |
| | § | |
| DEBTOR | § | |

OBJECTION TO CLAIM OF DEUTSCHE BANK NATIONAL TRUST COMPANY,
Trustee POOLING AND SERVICING AGREEMENT Dated as of January 1, 2001
SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NC1
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1
(CLAIM NO. 1)
AND NOTICE OF HEARING

DIANNE DORMAN, the above named Debtor, objects to the Proof of Claim filed by

DEUTSCHE BANK NATIONAL TRUST COMPANY, Trustee POOLING AND SERVICING

AGREEMENT Dated as of January 1, 2001 SECURITIZED ASSET BACKED RECEIVABLES

LLC TRUST 2007-NC1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-

NC1 ("Creditor").

1.      The Proof of Claim filed by Creditor is secured by real property of the Debtor and

alleges a total amount of claim as of the date the case was filed of $270,278.85 and includes a pre-

petition arrearage claim of $87,480.16.

2.      Debtor disputes the arrearage claim for Monthly Payments which the Debtor

believes does not properly give her credit for all payments made.  The Proof of Claim alleges

Monthly Payments owed of $29,207.85.  No pay history has been provided in support of this

claim.

3.      Further, Debtor disputes the arrearage claim for Escrow Advances which the Debtor believes improperly charges her for escrow advances that were not actually made. The Proof of Claim alleges Escrow Advances made of $53,612.91 without detail of the specific advances made.  The only advance of which the Debtor is aware is an advance to pay 2009 property taxes of $9,848.31.

4.      Further, Debtor disputes the arrearage claim for Fees, Costs & Propery Preservation Expenses for which Creditor has provided no proof or supporting documentation.

5.      Further, Debtor disputes the arrearage claim for POC fee of $150.00 as without basis and without approval of this Court.

6.      Debtor disputes the Post-Petition payment amount alleged on the Proof of Claim of $3,462.08.  The principal and interest on the mortgage is $1,390.85.  Annual property taxes and insurance are approximately $9,848.00 and $2,500.00, respectively. Given these amounts, the Debtor calculates a post petition payment to be approximately $2,419.00.

7.      Finally, Debtor disputes the total amount of claim alleged to be $270,278.85 as it is dependent on a determination of the arrearage claim.

8.      In an attempt to address the issues raised in this Objection to Claim, Debtor's attorney spoke with a representative of Creditor at the phone number provided on Creditor's Proof of Claim on April 27, 2011. The Creditor accepted all pertinent information and informed Debtor's attorney to expect a reply.  There has been no further communication.

WHEREFORE, DIANNE DORMAN, the above named Debtor, prays that the Claim of DEUTSCHE BANK NATIONAL TRUST COMPANY, Trustee POOLING AND SERVICING AGREEMENT Dated as of January 1, 2001 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NC1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1, be ALLOWED for pre-petition arrearages of $35,794.63 and ALLOWED a total claim of

$188,000.00, all as provided in Debtor's Chapter 13 Plan, and that the Debtor be granted such other and further relief as is just.

NOTICE OF HEARING

A Pre-Hearing Conference on the Debtor's OBJECTION TO CLAIM of DEUTSCHE BANK NATIONAL TRUST COMPANY, Trustee POOLING AND SERVICING AGREEMENT Dated as of January 1, 2001 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NC1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1 (Claim Number 1) will be held on JULY 15, 2011 at 8:30 o'clock a.m. at the Office of the Chapter 13 Trustee located at 6851 N.E. Loop 820, Suite 300, North Richland Hills, Texas 76180. **ANY OBJECTION NOT RESOLVED OR DEFAULTED AT THE PRE-HEARING CONFERENCE WILL BE HEARD BY THE COURT IMMEDIATELY FOLLOWING DOCKET CALL AT 8:30 O'CLOCK A.M. ON JULY 21, 2011 IN THE COURT ROOM OF THE HONORABLE D. MICHAEL LYNN, ROOM 128, 501 WEST 10TH STREET, FORT WORTH, TEXAS 76102.** Creditors are not required to attend the Pre-Hearing Conference or the Hearing unless they have an objection.

Respectfully submitted,

MACHI & ASSOC., P.C.
1521 N Cooper Street, Suite 550
Arlington, Texas  76011
(817) 335-8880
(817) 275-6660 (fax)


By:      "/s/"William F. Ritter, IV
         WILLIAM F. RITTER, IV
         State Bar No. 16955500

ATTORNEY FOR DEBTOR

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing Objection to Allowance of Claim has been served by Electronic Case Notification and/or by U.S. Postal Service, First Class Pre-Paid mail on the Debtor, Dianne Dorman, 100 Ascot Drive, Southlake, TX 76092, Claimant, DEUTSCHE BANK NATIONAL TRUST COMPANY, Trustee POOLING AND SERVICING AGREEMENT Dated as of January 1, 2001 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NC1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1, Ocwen Loan Servicing, LLC, Attn:Bankruptcy Department, 1661 Worthington Rd, Suite 100, West Palm Beach, FL 33409, Mr. Tim Truman, Chapter 13 Trustee, 6852 N.E. Loop 820, Suite 300, Fort Worth, TX  76180, and upon all creditors requesting notice on this 9th day of June, 2011.


"/s/"William F. Ritter, IV
WILLIAM F. RITTER, IV

# EXHIBIT D

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed July 26, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
IN THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

IN RE                               §
                                    §
DIANNE DORMAN                       §          CASE NO. 10-45884-DML-13
                                    §
    DEBTOR                          §

**ORDER ON OBJECTION TO CLAIM
OF DEUTSCHE BANK NATIONAL TRUST COMPANY, Trustee
POOLING AND SERVICING AGREEMENT Dated as of January 1, 2001
SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NC1
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1
(CLAIM NO. 1)**

On this day came for consideration the Objection to Claim of DEUTSCHE BANK

NATIONAL TRUST COMPANY, Trustee POOLING AND SERVICING AGREEMENT

Dated as of January 1, 2001 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST

2007-NC1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1 (CLAIM

NO. 1) filed by the Debtors DIANNE DORMAN. It appearing that notice having been given and

no timely response having been filed, the Court finds the Objection should be GRANTED.

IT IS THEREFORE ORDERED the claim of the who de who appearing on the Claims Register as Claim Number 1 is hereby ALLOWED a SECURED CLAIM for pre-petition arrearages of $35,794.63 and a total claim of $188,000.00,

# # # END OF ORDER # # #

# EXHIBIT E

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 13 |
| | § | |
| **DIANNE LOUISE  DORMAN** | § | |
| **Debtor** | § | **CASE NO. 14-40994** |

### NOTICE OF APPEARANCE AND REQUEST FOR DUPLICATE NOTICE COMBINED WITH REQUEST FOR ALL COPIES PURSUANT TO BANKRUPTCY RULE 2002(a), (b) AND PLEADINGS PURSUANT TO BANKRUPTCY RULES 3017(a) AND 9007

Comes now MACKIE WOLF ZIENTZ & MANN, P.C., pursuant to Bankruptcy Rules 9010(b), 2002(a), (b), 3017(a), 9007 and files this Notice of Appearance and Demand for Service of Papers as Counsel for OCWEN LOAN SERVICING, LLC, its successors and/or assigns, a secured creditor and party in interest in the captioned proceedings.

Request is hereby made that all notices given or required to be given in this case and in any cases consolidated herewith, and all papers served or required to be served in this case and in any cases consolidated herewith, be given to and served upon the undersigned attorneys at the mailing address, fax number or e-mail address set forth below.

MACKIE WOLF ZIENTZ & MANN, P.C. additionally requests that the DEBTOR and the Clerk of the Court place the name and address of the undersigned attorney on any mailing matrix to be prepared or existing in the above-numbered case, and on any list of creditors to be prepared or existing in the above-numbered bankruptcy case.

14-001526-670

Respectfully submitted,

MACKIE WOLF ZIENTZ & MANN, P.C.

/s/ Stephen Wu

_____

/s/ Stephen Wu
State Bar No.: 24042396
Mackie Wolf Zientz & Mann, P.C.
Parkway Office Center, Suite 900
14160 North Dallas Parkway
Dallas, TX 75254
Telephone: (214) 635-2650
Facsimile: (214) 635-2686
E-mail: swu@mwzmlaw.com

ATTORNEY FOR OCWEN LOAN SERVICING,
LLC

### CERTIFICATE OF SERVICE

I, Stephen Wu, hereby certify that a true and correct copy of the above and foregoing Notice of Appearance has been served on the parties via fax, U.S. Mail, e-mail or ECF on this May 2, 2014.

/s/ Stephen Wu

_____

/s/ Stephen Wu
Mackie Wolf Zientz & Mann, P.C.

# EXHIBIT F

# UNITED STATES BANKRUPTCY COURT
## IN THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: DIANNE LOUISE DORMAN | § | Case No. 14-40994 |
| | § | (Chapter 13) |
| | § | |
| OCWEN LOAN SERVICING, as | § | |
| mortgage servicer for DEUTSCHE BANK | § | CONFIRMATION HEARING |
| NATIONAL TRUST COMPANY, AS | § | DATE: 06/13/2014 8:30AM |
| TRUSTEE FOR SECURITIZED ASSET | § | |
| BACKED RECEIVABLES LLC TRUST | § | |
| 2007-NC1, MORTGAGE PASS- | § | JUDGE RUSSELL F. NELMS |
| THROUGH CERTIFICATES, SERIES | § | |
| 2007-NC1, their successors and/or assigns, | § | |
| Creditor | | |

vs.

DIANNE LOUISE DORMAN, Debtor and
TIM TRUMAN, Trustee,
Respondents

OCWEN LOAN SERVICING, as mortgage servicer for DEUTSCHE BANK NATIONAL
TRUST COMPANY, AS TRUSTEE FOR SECURITIZED ASSET BACKED
RECEIVABLES LLC TRUST 2007-NC1, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2007-NC1, their successors and/or assigns

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, OCWEN LOAN SERVICING, as Mortgage Servicer (hereinafter Creditor), a

secured creditor herein, and pursuant to 11 U.S.C. §§ 1322(b)(2), 1324 and 1325(a)(5), and

Bankruptcy Rule 3015(f) files this, its Objection to Debtor(s) proposed Chapter 13 Plan

(hereinafter Plan), and in support thereof would respectfully show the Court as follows:

## I. BACKGROUND

1.   DIANNE LOUISE DORMAN, the Debtor(s) (hereinafter BORROWER), commenced

the above captioned Chapter 13 case on 03/04/2014.  TIM TRUMAN is the duly appointed and

acting Chapter 13 Trustee.

2.    Creditor is the mortgage servicer for the mortgagee of a Note in the original principal sum of $190,000.00, dated 09/08/2006 executed by Debtor(s).  The Note is secured by a Deed of Trust of even date therewith granting a lien against real property located at 100 ASCOT DR., SOUTHLAKE, TX 76092 (hereinafter Property).  The Note and Deed of Trust were assigned to Creditor.  True and correct copies of the Deed of Trust and Note are attached hereto.

3.    Proof of claims are due in this case by 07/14/2014.  According to Ocwen Loan Servicing, LLC's records, the total debt due and owing to Creditor as of the Petition Date was $317,651.46.

## II. OBJECTION TO PROPOSED PLAN

4.    Creditor objects to confirmation of the Plan because the Plan understates the pre-petition arrears due and owing to Creditor.  Debtor(s) Plan incorrectly states that there is only $35,794.63 due in arrearages, when in fact, Creditor is entitled to full payment of its secured pre-petition arrearage claim pursuant to the Note and Deed of Trust in the amount of $141,606.94.  Creditor therefore objects to Debtor(s) proposed treatment of its secured claim.

5.    Because the arrears listed for Creditor are understated, the Chapter 13 plan may not be feasible.

**WHEREFORE, PREMISES CONSIDERED**, Creditor prays that this Court deny confirmation of the Plan proposed by the Debtor(s) and grant Creditor such other and further relief, at law and in equity, as is just.

Respectfully submitted,

MACKIE WOLF ZIENTZ & MANN, P.C.

*/s/ Chelsea Schneider*
Chelsea Schneider
Bar No. 24079820
Mackie Wolf Zientz & Mann, P.C.
Parkway Office Center, Suite 900
14160 North Dallas Parkway
Dallas, TX 75254
Telephone: (214) 635-2650

14-001526-670

Facsimile: (214) 635-2686
Email: cschneider@mwzmlaw.com
ATTORNEY FOR CREDITOR

### Certificate of Conference and Service

I, Chelsea Schneider, do hereby certify on this 6th of June 2014 a call was made to opposing counsel that this Objection would be filed and a copy of this motion was served on the persons listed below in the manner indicated.

*/s/ Chelsea Schneider*
Chelsea Schneider
Movant's Counsel

Via Pre-Paid U.S. Mail:
**DIANNE LOUISE DORMAN**
100 ASCOT DRIVE
SOUTHLAKE, TX 76092
Debtor(s)

Via ECF:
**DANIEL S. WRIGHT**
1521 NORTH COOPER STREET
SKYMARK TOWER – SUITE 550
ARLINGTON, TX 76011
Attorney for Debtor(s)

Via ECF:
**TIM TRUMAN**
6851 NE LOOP 820, STE 300
FORT WORTH, TX 76180
Chapter 13 Trustee

Via ECF:
US Trustee

14-001526-670

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: DIANNE LOUISE DORMAN | § | Case No. 14-40994 |
| | § | (Chapter 13) |
| | § | |
| OCWEN LOAN SERVICING, as | § | |
| mortgage servicer for DEUTSCHE BANK | § | CONFIRMATION HEARING |
| NATIONAL TRUST COMPANY, AS | § | DATE: 06/13/2014 8:30AM |
| TRUSTEE FOR SECURITIZED ASSET | § | |
| BACKED RECEIVABLES LLC TRUST | § | |
| 2007-NC1, MORTGAGE PASS- | § | |
| THROUGH CERTIFICATES, SERIES | § | |
| 2007-NC1, their successors and/or assigns, | § | |
| Creditor | | |

## <u>ORDER DENYING CONFIRMATION</u>

The Objection to Confirmation filed by OCWEN LOAN SERVICING, as mortgage servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-NC1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1, their successors and/or assigns is granted. It is therefore, ORDERED, ADJUDGED AND DECREED that confirmation of

DEBTOR(s) Chapter 13 Plan is denied, without prejudice to submission of a Plan that cures

Creditors Objection.

APPROVED AS TO FORM AND SUBSTANCE:

/s/ Chelsea Schneider
_____
Chelsea Schneider
State Bar No. 24079820
Stephen Wu
State Bar No.: 24042396
Mackie Wolf Zientz & Mann, P. C.
Parkway Office Center, Suite 900
14160 North Dallas Parkway
Dallas, TX 75254
Telephone: (214) 635-2650
Facsimile: (214) 635-2686
ATTORNEY FOR CREDITOR

MIN:

THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),
ARTICLE XVI OF THE TEXAS CONSTITUTION

# TEXAS HOME EQUITY NOTE
(Fixed Rate - First Lien)

September 8, 2006        Southlake        Texas
[Date]                        [City]                    [State]

ASCOT DR., Southlake, TX 76092

[Property Address]



## 1. BORROWER'S PROMISE TO PAY

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for the Extension of Credit that I have received evidenced by this Note, I promise to pay U.S. $190,000.00            (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **New Century Mortgage Corporation**

. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the Security Instrument executed concurrently herewith (the "Security Instrument").

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      7.975 %. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or Prepayment of the Extension of Credit, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the Principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   **1st** day of each month beginning **November 1, 2006**     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **10/01/2036**     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **18400 Von Karman, Suite 1000, Irvine, CA 92612** or at a different place if required by the Note Holder.

---

TEXAS HOME EQUITY NOTE (Fixed Rate-First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3244.1 1/01
(rev. 10/03)
Initials:



**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated as fees to be incurred in connection with maintaining or servicing this Extension of Credit.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of my promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 8 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

## 9. WAIVERS

**I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.**

## 10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's p rior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. APPLICABLE LAW

This Note shall be governed by the law of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

## 12. NO ORAL AGREEMENTS

THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN TEHIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

_____(Seal)     _____(Seal)
DIANE L. DORMAN          -Borrower                                        -Borrower

_____(Seal)     _____(Seal)
                                  -Borrower                                        -Borrower

_____(Seal)     _____(Seal)
                                  -Borrower                                        -Borrower

_____(Seal)     _____(Seal)
                                  -Borrower                                        -Borrower

*[Sign Original Only]*

**Electronically Recorded**
Official Public Records

*Suzanne Henderson*

Suzanne Henderson

Tarrant County Texas
2006 Sep 21 03:10 PM
Fee: $ 100.00
Submitter: ACS INC

D206296193

Return To:

New Century Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

*GF*

Prepared By:

New Century Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

———————————— [Space Above This Line for Recording Data] ————————————

THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY
SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (First Lien)

MIN

This Security Instrument is not intended to finance Borrower's acquisition of the Property.

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 10, 12, 17, 19, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 15.
(A) "Security Instrument" means this document, which is dated **September 8, 2006**
together with all Riders to this document.
(B) "Borrower" is DIANE L. DORMAN

DIANNE

Borrower is the grantor under this Security Instrument.

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH
MERS

-8046(TX) (0506)    Form 3044. 1-1/01
(rev. 10/03)
Initials
Page 1 of 18

VMP Mortgage Solutions, Inc. (800)521-7291

**(C) "Lender"** is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California
Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender includes any holder of the Note who is entitled to receive payments under the Note.
**(D) "Trustee"** is Eldon L. Youngblood

. Trustee's address is
2711 North Haskell Avenue, Suite 2700 LB 25, Dallas, Texas 75204

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501 - 2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated September 8, 2006
The Note states that Borrower owes Lender ONE HUNDRED NINETY THOUSAND AND 00/100
Dollars
(U.S. $190,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 10/01/2036
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Extension of Credit"** means the debt evidenced by the Note, as defined by Section 50(a)(6), Article XVI of the Texas Constitution and all the documents executed in connection with the debt.
**(I) "Riders"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| | |
|---|---|
| ☐ Texas Home Equity Condominium Rider | ☐ Other: |
| ☒ Texas Home Equity Planned Unit Development Rider | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the

Initials: _____

VMP-8046(TX) (0508)                    Page 2 of 18                    Form 3044.1   1/01 ( rev. 10/03)

Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the
              County                    of                  Tarrant                    :
        [Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]
**See Legal Description Attached Hereto and Made a Part Hereof**

Parcel ID Number: 06435173                                        which currently has the address of
100 ASCOTE DR.                                                                              [Street]
Southlake                                            [City], Texas 76092                   [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead

Initials:

-8046(TX) (0506)                         Page 3 of 18                     Form 3044.1   1/01 ( rev. 10/03)

property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Initials: _____

-8046(TX) (0506)          Page 5 of 18          Form 3044.1   1/01 ( rev. 10/03)

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Extension of Credit, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Initials

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Initials:

**8. Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(c), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgment of fair market value of the property as described in Section 27.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such

Initials: _____

VMP-8046(TX) (0506)                Page 8 of 18                Form 3044.1   1/01 ( rev. 10/03)

Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or

Initials: _____

-8046(TX) (0508)          Page 9 of 18          Form 3044.1    1/01 ( rev. 10/03)

Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument, but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument and to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Extension of Credit Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Extension of Credit is subject to a law which sets maximum Extension of Credit charges, and that law is finally interpreted so that the interest or other Extension of Credit charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender will make this refund by making a payment to Borrower. **The Lender's payment of any such refund will extinguish any right of action Borrower might have arising out of such overcharge.**

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be

Initials:

-8046(TX) (0506)                     Page 10 of 18                     Form 3044.1   1/01 ( rev. 10/03)

deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the laws of Texas. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution

Initials: _____

-8046(TX) (0506)                    Page 11 of 18                    Form 3044.1    1/01 ( rev. 10/03)

whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. For example, Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution, generally provides that a lender has 60 days to comply with its obligations under the extension of credit after being notified by a borrower of a failure to comply with any such obligation. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender 60 days after receipt of notice to comply, as provided in this Section 19, with Lender's obligations under the Extension of Credit to the full extent permitted by Section 50(a)(6), Article XVI of the Texas Constitution. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have 60 days after receipt of notice to comply with the provisions of Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender 60 days after such notice has been received by Lender to comply. Except as otherwise required by Applicable Law, only after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit. Borrower will cooperate in reasonable efforts to correct any failure by Lender to comply with Section 50(a)(6), Article XVI of the Texas Constitution.

VMP-8046(TX) (0508)     Page 12 of 18     Initials: _____     Form 3044.1   1/01 ( rev. 10/03)

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document may be reformed, by written notice from Lender, without the necessity of the execution of any amendment or new document by Borrower, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document may be reformed, by written notice from Lender, without the necessity of the execution of any new amendment or new document by Borrower.

Lender's right-to-comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a

Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.

**22. Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

**24. Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

**25. Proceeds.** Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or debt to another lender.

**26. No Assignment of Wages.** Borrower has not assigned wages as security for the Extension of Credit.

**27. Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

**28. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**29. Acknowledgment of Waiver by Lender of Additional Collateral.** Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Borrower (except in the event of actual fraud), for the Extension of Credit. This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.

Initials: _____

Form 3044.1    1/01 ( rev. 10/03)

VMP®-8046(TX) (0506)

Page 16 of 18

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.

_____          _____ (Seal)
                                                              -Borrower
                                   DIANE L. DORMAN
Printed Name: _____      DIANUE
              [Please Complete]

_____          _____ (Seal)
                                                              -Borrower
Printed Name: _____
              [Please Complete]

_____ (Seal)   _____ (Seal)
                    -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                    -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                    -Borrower                                 -Borrower

VMP®-8046(TX) (0506)          Page 17 of 18          Form 3044.1   1/01 ( rev. 10/03)

STATE OF TEXAS
County of Tarrant

Before me Bill Plunk Notary                    on this day personally appeared

Dianne L. Dorman

known to me (or proved to me on the oath of _____ ) to be the person whose name is subscribed to the
or through Texas Drivers Lic
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

          Given under my hand and seal of office this      8th   day of   Sept. 2006

     (Seal)

     Bill Plunk
     Notary Public, State of Texas          
     My Commission Expires:                 Notary Public
     September 21, 2009

My Commission Expires: 9-21-09

                                                         Initials
-8046(TX) (0506)              Page 18 of 18          Form 3044.1   1/01 ( rev. 10/03)

G. F.

## Exhibit A

Lot 1, Block 2, of CHAPEL DOWNS, an Addition to the City of Southlake, TARRANT County, Texas, according to the plat thereof recorded in Cabinet A, Slide 386, of the Plat Records of TARRANT County, Texas.

# EXHIBIT G



**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed October 6, 2014**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

IN RE:                                          **CASE NUMBER: 14-40994-RFN**
**DIANNE LOUISE DORMAN**
**100 Ascot Dr**
**Southlake , TX  76092**

            Debtor

---

### ORDER CONFIRMING CHAPTER 13 PLAN, VALUING COLLATERAL;
### ALLOWING DEBTOR'S ATTORNEY'S FEES; PROVIDING FOR A TRUSTEE'S
### RECOMMENDATION CONCERNING CLAIMS AND OTHER RELATED MATTERS
### (WITH REVISIONS TO THE PLAN AS SPECIFIED HEREIN)

---

It having been determined after at least thirty-one (31) days notice to all creditors, no hearing having been requested and no objection to Confirmation or Valuation having been timely filed, or if filed, having been overruled, resolved or withdrawn:

That the Debtor' (s') Chapter 13 Plan ("Plan") complies with all applicable provisions of Title 11 of the United States code;

That any fee, charge, or amount required under Chapter 13 of Title 28 of the United States Code or by the Plan to be paid before Confirmation has been paid;

That the Plan has been proposed in good faith and not by any means forbidden by law;

That the value, as of the effective date of the Plan, of property to be distributed under the Plan on account of each unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtor  (s) were liquidated under Chapter 7 of Title 11 United States Code on such date;

CASE NO. 14-40994-RFN
Debtor: DIANNE LOUISE DORMAN

That the Plan provides that the holders of secured claims who have not accepted the Plan shall retain their liens until the earlier of the payment of the underlying debt determined under non bankruptcy law or discharge under Section 1328; and if this case is dismissed or converted without completion of the Plan, such lien shall also be retained by such holder to the extent recognized by applicable non bankruptcy law; and the value, as of the effective date of the Plan, of property to be distributed under the Plan on account of secured claims whose holders have not accepted the Plan is not less than the amount of those claims; and as to holders of secured claims who have not accepted the Plan, if property to be distributed pursuant to the Plan is in the form of periodic payments, such payments will be in equal monthly amounts; and if the holder of the claim is secured by personal property, the amount of such payments will not be less than the amount sufficient to provide to the holder of such claim adequate protection during the period of the Plan; or the Debtor will surrender the property securing such claim to such holder;

That the action of the Debtor in filing the petition was in good faith;

That the debtor has paid all amounts that are required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the petition, if the Debtor is required by a judicial or administrative

That the Debtor has filed all applicable Federal, State, and local tax returns as required by Section 1308 of Title 11 of the United States Code;

That no objection to Confirmation has been filed by the Trustee or any unsecured creditor, or if so, that the debtor (s) will pay under the Plan, all Debtor's (s') projected disposable income for the applicable commitment period, to be applied to payments to unsecured creditors under the Plan;

That Confirmation of the Debtor's (s') Plan and the Valuation set forth therein have been recommended by the Standing Chapter 13 Trustee; and

That no further operating reports are necessary or required to be filed with the Standing Chapter 13 Trustee.

**IT IS THEREFORE ORDERED** that the Debtor's (s') Chapter 13 Plan filed on or about April 10, 2014 is confirmed.

**IT IS FURTHER ORDERED** that the Debtor (s) shall pay the following:
TO THE TRUSTEE THE SUM OF $100.00 FOR THE FIRST MONTH; $350.00 PER MONTH FOR THE NEXT 7 MONTHS; $1,100.00 PER MONTH FOR THE NEXT 2 MONTHS; $2,456.00 PER MONTH FOR THE FINAL 50 MONTHS FOR A TOTAL OF $127,550.00 IN 60 MONTHS.

**IT IS FURTHER ORDERED** that allowed non-priority unsecured claims will be paid pro rata from the **greater** of (1.) an unsecured creditor's **pool** of $0.00, or (2.) the value of debtor's(s') equity in **non-exempt** property of $700.00 reduced by the payment of allowed administrative expenses and allowed priority claims .

**IT IS FURTHER ORDERED** that, if applicable, cause exists to extend the term of the Plan beyond 36 months but not more than 60 months.

**IT IS FURTHER ORDERED** that the Debtor's (s') attorney, TED MACHI, is allowed a total fee not to exceed $3,500.00 with $ 2606.00 to be paid through the Plan by the Trustee, unless a greater amount is approved by separate order of the Court after hearing on fee application.

**IT IS FURTHER ORDERED** that for purposes of distribution under the plan, Section 506 and Section 1325 (a)(5) of the Bankruptcy code, the **value** of collateral securing any claim herein, **annual percentage rate** and **treatment** of the claim secured thereby is as set forth in Section I, Paragraphs "E", "F", and "G" of the Debtor's (s')

CASE NO. 14-40994-RFN
Debtor: DIANNE LOUISE DORMAN

Chapter 13 Plan and Motion for Valuation herein confirmed, except:

| CREDITOR NAME | COMMENT | CLAIM AMOUNT | COLL. VALUE | ANNUAL PERCENTAGE RATE | TREATMENT (Monthly Payment Direct Surr or ProRata) |
|---|---|---|---|---|---|
| CITY OF SOUTHLAKE | 2/HOMESTEAD/10- | $10,134.94 | $382,900.00 | 12.00% | ProRata |
| RON WRIGHT TAX ASSESSOR/COLLECTOR | 9/HOMESTEAD/10- | $36,488.17 | $382,900.00 | 12.00% | ProRata |
| TARRANT COUNTY TAX COLLECTOR | HOMESTEAD/10-14 | $12,141.03 | $382,900.00 | 12.00% | ProRata |

**IT IS FURTHER ORDERED** that Executory Contracts and Unexpired Leases shall be treated as set forth in Section I, Paragraph "K" of the Debtor's (s') Chapter 13 Plan and Motion for Valuation herein confirmed, except:

| § 365 Party | ASSUME/ REJECT | CURE AMOUNT | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|
| | | $0.00 | | |

**IT IS FURTHER ORDERED** that the valuation of collateral subject to a 910 claim or listed as "Direct" is not res judicata, collateral estoppel or law of the case as to any party.

**IT IS FURTHER ORDERED** that if a Claim is not paid during the term (Approximate) shown in Section I, Paragraphs D, E, H and or I of the Plan, the Trustee shall continue to pay the Claim until it is paid in full, as stated in Section II, Paragraph U of the Plan;

**IT IS FURTHER ORDERED** that the Trustee is authorized to receive, endorse, and apply to any delinquent payments under the Plan, any Income Tax Refund payable to debtor (s) during the pendency of this case, and apply any IRS refund in excess of $2,000.00 per year pro rata to Debtor's allowed general unsecured creditors, per paragraph 9 of General Order 2014-03.

**IT IS FURTHER ORDERED** that the Debtors shall not dispose of or encumber any non-exempt property prior to discharge without consent of the Trustee or order of the Court after notice to the Trustee and all creditors.

**IT IS FURTHER ORDERED** that the Standing Chapter 13 Trustee is hereby discharged from any liability from the Debtor's (s') operation of business and from any further duty to investigate the business of the debtor or to require further operating reports from Debtor.

**IT IS FURTHER ORDERED** that pursuant to General Order 2014-03, Paragraph 8, as soon as practicable after the governmental claims bar date, the Trustee shall prepare and serve on Debtor's counsel, all creditors who were scheduled, all creditors who filed claims and any party that has filed a Notice of Appearance, a Trustee's Recommendation Concerning Claims ("TRCC") and notice of hearing and pre-hearing conference thereon. The TRCC may be deemed in part to be an Objection to Claims. Objections to the TRCC shall be filed within thirty (30) days from the date of service of the TRCC. Unless an Objection is timely filed as to the amount or class of any claim, the claim will be allowed or approved only as described in the TRCC, and such amount or class will be binding on all parties without further order of the court. All unresolved objections to the TRCC shall be deemed waived if not timely filed or if the proponent of any such objection fails to attend the Trustee's pre-hearing conference or give the Trustee prior written notice that a hearing is necessary.

**IT IS FURTHER ORDERED** that nothing herein or in the Plan shall determine the **allowed amount** or **class** of any claim which matters are hereby reserved until after the applicable claims bar date and the Trustee's Recommendation Concerning Claims has been filed. Valuation of collateral, interest rate, and treatment of claims shall be as provided in the Plan or herein.

IT IS FURTHER ORDERED that both the Debtor and Ocwen Loan Servicing ("parties") have agreed to pass the Ocwen Loan Servicing Objection to Confirmation (Court Docket #38, filed on June 6, 2014) to the

CASE NO. 14-40994-RFN
Debtor: DIANNE LOUISE DORMAN

Trustee's Recommendation concerning Claims so that the Proof of Claim can be amended and the parties can try and reach an agreement.

**IT IS FURTHER ORDERED** that priority and unsecured creditors shall receive interest at the legal rate from the petition date (priority first, then unsecured second) to the extent debtor's(s') equity in non-exempt property, less trustee's fees, exceeds the principal amount of allowed priority and unsecured claims, pursuant to section 1325(a)(4) and section 726(a)(5) of the Bankruptcy Code.

# # # END OF ORDER # # #

# EXHIBIT H

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT  NORTHERN DISTRICT OF TEXAS | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor: **Dianne Louise Dorman** | Case Number: **14-40994-RFN-13** | |
|---|---|---|

*NOTE: Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>**Ocwen** | **COURT USE ONLY** |
|---|---|
| Name and address where notices should be sent:<br>**Ocwen<br>P.O. Box 785056<br>Orlando, FL 32878-5056**<br><br>Telephone number:          email: | ☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number: _____<br>*(if known)*<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number:          email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim.  Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**    **$188,000.00**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges.

**2. Basis for Claim:    Money loaned**
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>xxxxx2576 | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim**   (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:**  ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**   100 Ascot Dr., Southlake, TX

**Value of Property:**        **$382,900.00**

**Annual Interest Rate:** _____  ☐ Fixed   or  ☐ Variable
**(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

_____

**Basis for perfection:**
**Deed of Trust**

**Amount of Secured Claim:**   **$188,000.00**

**Amount Unsecured:**        **$0.00**

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507(a)(7).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507(a)(4).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507(a)(8).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507(a)(____).

**Amount entitled to priority:**

_____

*Amounts are subject to adjustment on 4/1/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:**   The amount of all payments on this claim has been credited for the purpose of making this proof of claim.  (See instruction #6)

B10 (Official Form 10) (04/13)

---

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:**    (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☐ I am the creditor's authorized agent.    ☑ I am the trustee, or the debtor, or their authorized agent.  (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:    **Daniel S. Wright**
Title:
Company:    **Machi & Associates, P.C.**
Address and telephone number (if different from notice address above):    **/s/ Daniel S. Wright**              **7/14/2014**
**1521 N. Cooper, Ste 550**                                                        (Signature)                          (Date)
**Arlington, TX  76011**

Telephone number: **(817) 335-8880**    email:

*Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.*

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law.  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien

documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the past due amount on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507(a).**
If any portion of the claims falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicers as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (04/13)

_____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom the debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. § 101(10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. § 101(5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

_____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

# EXHIBIT I

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FT. WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | **'** | |
| | **'** | |
| | **'** | **CASE NO. 16-40061-rfn13** |
| **DIANNE DORMAN,** | **'** | |
| | **'** | **CHAPTER 13** |
| **Debtor** | **'** | |
| | **'** | **HEARING DATE AND TIME:** |
| | **'** | **May 13, 2016 at 10:30 AM** |

### OBJECTION TO CONFIRMATION BY DEUTSCHE BANK NATIONAL TRUST COMPANY

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Comes now Deutsche Bank National Trust Company, its successors and/or assigns (ACreditor®)[1], a secured creditor and party in interest, and pursuant to 11 U.S.C. ' ' 1322 (b)(2), 1324 and 1325(a)(5), and Bankruptcy Rule 3015(f) files its Objection to Debtor's proposed Chapter 13 Plan (APlan®), and in support thereof would respectfully show the Court as follows:

### BACKGROUND

**1.** Debtor filed a voluntary petition under Chapter 13 of Title 11, United States Bankruptcy Code on January 4, 2016.

**2.** On September 8, 2006, a Note (the "Note") was executed by Debtor to New Century Mortgage Corporation in the original principal sum of $190,000.00 which is secured by a Deed of

---

[1] Ocwen Loan Servicing, LLC is the servicer of the subject loan. Deutsche Bank National Trust Company is the current owner of the subject loan.

Trust of even date therewith granting a lien against real estate located at 100 Ascot Dr., Southlake, TX 76092 ("Property"). Copies of the Note and Deed of Trust will be attached to Creditor's forthcoming proof of claim to be filed in this case.

3.        The total debt due and owing to Creditor as of the Petition Date was $438,567.12 as will be evidenced by Creditor=s forthcoming secured proof of claim (AProof of Claim@).

4.        The bar date for the filing of the Proof of Claim is after the confirmation hearing scheduled in this case. Creditor is in the process of preparing its Proof of Claim. Creditor asserts this Objection to preserve its rights and to assist in the efficient administration of the confirmation process.

## OBJECTION TO PROPOSED PLAN

5.        Creditor objects to confirmation of the Plan because the Plan understates the pre-petition arrears due and owing under the Note. Debtors' Plan incorrectly states that there is only $85,000.00 due in arrearages when, in fact, Creditor is entitled to full payment of its secured pre-petition arrearage claim pursuant to the Note and Deed of Trust in the amount of $266,098.70 as of January 4, 2016. Creditor therefore objects to the proposed treatment of its secured claim.

6.        Because the arrears listed for Creditor are understated, the Chapter 13 Plan may not be feasible. Further, to the extent that the interest rate is not the contractual rate of interest as set forth in the Note or the interest rate specified in this district, Creditor objects to the interest rate set forth in the plan.

7.        Because Creditor was forced to file this Objection to Confirmation to protect its secured interest in the subject real property, it has incurred reasonable attorneys' fees.

# **PRAYER**

**WHEREFORE, PREMISES CONSIDERED,** Creditor prays that this Court deny confirmation of the Plan as proposed, award attorneys' fees and costs, and grant Creditor such other and further relief, at law and in equity, as is just.

Respectfully Submitted,

By: /s/ Gordon W. Green
        Gordon W. Green, SBN 24083102
        **ATTORNEY FOR CREDITOR**
        550 Westcott, Suite 560
        Houston, Texas 77007
        Telephone: (713) 293-3610
        Facsimile: (713) 293-3636

        *Mailing Address*
        4375 Jutland Drive, Suite 200
        P.O. Box 17933
        San Diego, CA 92177-0933

**CERTIFICATE OF CONFERENCE AND CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2016, I left a detailed voice mail message for the Debtor's attorney regarding the filing of this Objection to Confirmation and the basis of said Objection. As of the date of the filing of this Objection, I have not received a return telephone call and assume this Objection to be opposed. I hereby certify that a true and correct copy of the foregoing *Objection to Confirmation of Plan* has been served upon the following parties via electronic means through the Court's CM/ECF system or by pre-paid regular first class U.S. Mail on May 6, 2016.


/s/ Gordon W. Green
Gordon W. Green


**DEBTOR'S ATTORNEY**
**(via electronic notice)**

William F. Ritter, IV
William Ritter Law Office
Campbell Centre I-North Tower
8350 N Central Expwy, Suite 1310
Dallas, TX 75206-1639
william@ritterlawworks.com

**DEBTOR**

Dianne Dorman
100 Ascot Dr
Southlake, TX 76092

**TRUSTEE**
**(via electronic notice)**

Tim Truman
6851 N.E. Loop 820, Suite 300
N Richland Hills, TX 76180
ftworthchapter13trustee-ecf@ch13ftw.com

**U. S. TRUSTEE**
**(via electronic notice)**

U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242
ustpregion06.da.ecf@usdoj.gov